Elizabeth Lewis **HOSACK,** Martha Dickinson, Donald E. King, Mallie Truman Harris, Thomas A. Stewart, Patricia Jones, Paul Edward Biagi, Ernest M. Urvater and Bertram Morris, Plaintiffs,

v.

Joseph R. **SMILEY** and the Regents of the University of Colorado, Defendants.

Civ. A. No. 67–C–310.

United States District Court
D. Colorado.

Dec. 4, 1967.

William F. Reynard, Denver, Colo., and John D. Herron, American Civil Liberties Union, Denver, Colo., for plaintiffs.

John P. Holloway, Resident Counsel for the University of Colorado and Asst. Atty. Gen., Boulder, Colo., for defendants.

Before LEWIS, Circuit Judge, and LANGLEY and DOYLE, District Judges.

## MEMORANDUM OPINION AND ORDER

DOYLE, District Judge.

The Plaintiffs herein, teachers and employees of the University of Colorado, seek injunctive relief against the enforcement of a University requirement that they take an oath to support the Constitution and laws of the United States and the Constitution and laws of the State of Colorado as a condition of their employment. The allegations are that the Plaintiffs are deprived of rights, privileges, and immunities of citizens of the United States secured by the Fourteenth Amendment, Constitution of the United States.

Jurisdiction exists by reason of 28 U.S.C. § 1343(3), and 42 U.S.C. § 1983. In addition to injunctive relief, Plaintiffs also demand a declaration of rights in accordance with 28 U.S.C. § 2201.

The Complaint alleges: (1) That the oath is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment; (2) That the oath infringes First Amendment freedom of expression contrary to the Fourteenth Amendment; (3) That the oath

requirement is deficient in failing to provide hearing procedures for persons who refuse to take the oath; (4) That discrimination exists in the administration of the oath in that persons who took the old oath, which was declared invalid by this Court, are not required to take the new oath—the basis being that only parts of the old oath were condemned, and the part which is now embodied in the new oath remained.

The classes before the Court consist of both teachers and employees. Some had taken the old oath. Others had not taken the old oath and are refusing to take the new one.

The matter was heard by a three judge court convened pursuant to 28 U.S.C. § 2281. Briefs have been filed and the case stands submitted.

The old oath which was prescribed by the Colorado General Assembly, C.R.S. 1963 123–17–6 was struck down in our recent decision in Gallagher v. Smiley, D.C., 270 F.Supp. 86. In that case, speaking through Judge Chilson, we said:

"The Court concludes as a matter of law that the statute requiring the plaintiff to take the oath in question, when construed in the light of Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) is violative of due process because the oath is unduly vague, uncertain and broad and that a permanent injunction should issue prohibiting the defendants from requiring the plaintiff to take it."

The oath there in question was more extensive than that now before us although it contained the present oath as well. The Regents promulgated the present oath in an effort to comply with the *Gallagher* decision. This oath simply provides:

"I solemnly swear or affirm that I will support the Constitution of the State of Colorado and of the United States of America and the laws of the State of Colorado and of the United States."

The Regents did not, however, require that all personnel take the new oath. Those who had taken the old oath were not required to take the new one. The reason for this would appear to be that the Regents considered the non-condemned part of the old oath as still standing.

I

■■ Contrary to the contention of the Plaintiffs we hold that the oath in question is not vague and indefinite so as to be in violation of the Fourteenth Amendment. First of all, the act of the Regents in promulgating the oath is legislative. The Supreme Court has enunciated a test for determining whether a statute is unconstitutionally vague. Connally v. General Construction Co., 269 U.S. 385, at 391, 46 S.Ct. 126, 70 L.Ed. 322 and see also Cramp v. Board of Instruction of Orange County, 368 U.S. 278, 287, 82 S.Ct. 275, 280, 7 L.Ed.2d 285:

"* * * a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

The oath in question is plain, straightforward and unequivocal. A person taking it is not left in doubt as to his undertaking. The obligation assumed is one of simple recognition that ours is a government of laws and not of men. Such an oath was upheld in Knight v. Regents of the University of the State of New York, 269 F.Supp. 339, 341 (S.D. N.Y.1967) wherein it was said:

"The statutory language of support of the constitutional governments can be substantially equated to that allegiance which, by the common law, every citizen was understood to owe his sovereign."

We have considered the very recent decision of the Supreme Court in Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228. That case does not con-

demn loyalty oaths in general and does not bear on the issues in this case.

## II

■ Nor does the oath have any tendency to curtail freedom of expression as guaranteed by the First Amendment (and incorporated in the Fourteenth). Recognition of and respect for law in no way prevents the right to dissent and question repugnant laws. Nor does it limit the right to seek through lawful means the repeal or amendment of state or federal laws with which the oath taker is in disagreement. Support for the constitutions and laws of the nation and state does not call for blind subservience. Such an extreme concept is not now nor has it ever been accepted.[1]

The law applicable to legislators provides what seems to us to be a clear analogy. The Constitution Art. VI, Section 3 requires that they as well as executive and judicial officers must take an oath "to support this constitution." The Supreme Court in dictum at least has said that a legislator can be required to take an oath to support the Constitution of the United States. Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 349, 17 L.Ed. 2d 235. In this case the Supreme Court has indicated that on public issues at least, the freedom of expression of a legislator who is bound by the constitutional support oath is as broad as that of a private citizen who is not restricted by the constitutional oath.[2]

1. In Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810, the Supreme Court held that Bar Examiners were not justified in refusing admittance to an applicant who had severely criticized officials and laws. The Court said in a dictum that "Because of the very nature of our democracy such expressions of political views must be permitted. Citizens have a right under our constitutional system to criticize government officials and agencies. Courts are not, and should not be, immune to such criticism. Government censorship can no more be reconciled with our national constitutional standard of freedom of speech and press when done in the guise of determining 'moral character' than if it should be attempted directly." 353 U.S. 252, 269, 77 S.Ct. 722, 731 (1957).

2. "The State declines to argue that Bond's statements would violate any law if made by a private citizen, but it does argue that even though such a citizen might be protected by his First Amendment rights, the State may nonetheless apply a stricter standard to its legislators. We do not agree." Bond v. Floyd, supra, 87 S.Ct. at 348.

"The State attempts to circumvent the protection the First Amendment would afford to these statements if made by a private citizen by arguing that a State is constitutionally justified in exacting a higher standard of *loyalty* from its legislators than from it citizens. Of course, a State may constitutionally require an oath to support the Constitution from its legislators which it does not require

of its private citizens. But this difference in treatment does not support the exclusion of Bond, for while the State has an interest in requiring its legislators to swear to a belief in constitutional processes of government, surely the oath gives it no interest in limiting its legislators' capacity to discuss their views of local or national policy. The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy. The central commitment of the First Amendment, as summarized in the opinion of the Court in New York Times v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964), is that 'debate on public issues should be uninhibited, robust, and wide-open.' We think the rationale of the *New York Times* case disposes of the claim that Bond's statements fell outside the range of constitutional protection. Just as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected. The State argues that the *New York Times* principle should not be extended to statements by a legislator because the policy of encouraging free debate about governmental operations only applies to the citizen-critic of his government. We find no support for this distinction in the *New York Times* case or in any other decision of this Court. The interest of the public in hearing all sides of a public issue is hardly advanced by

It is recognized, of course, that the courts are scrupulous in protecting the right of freedom of expression in the academic institution.[3] But this right is no less important in legislative bodies where public debate " * * * uninhibited, robust, and wide-open * * * " New York Times v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) is an indispensable ingredient of our law making process.

So we hold that an oath to support the constitution and laws of the state and nation does not and can not run counter to First Amendment freedoms.

### III

In support of their contention that the "old oath" was held invalid in part only and that the remainder retains vitality, Defendants argue that since this Court in *Gallagher,* supra, relied entirely on the decision of the Supreme Court in Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) wherein the Supreme Court was concerned primarily with the expansive portions of the oath there in question, it was only the expansive parts which were condemned.

It is further argued that persons who subscribed to the old oath need not again swear to support the Constitutions and laws of the United States and of the State of Colorado. This position assumes that an oath, like a statute, is severable whereby the valid portion of it can be salvaged. We seriously question whether the severability doctrine can be applied in this manner. In any event the argument is in other respects invalid. The Supreme Court in *Baggett* voided the statutes which provided the underpinnings for the oath and in doing so the Court voided the oath in its entirety. Similarly this Court in *Gallagher* held the Colorado statute which prescribed

that oath to be unconstitutional. The result is that the legislative oath became a nullity. Now we have a completely new oath which has been legislated by the Board of Regents. To hold that the old legislative oath retains some vitality so that those who took it are to be excused from taking the new one would be anomalous.

Moreover, great confusion would result from accepting the argument of Defendants. The oath has a personal quality. It is administered by confronting the oath-taker with the precise provisions of his undertaking. To now hold that he is bound by so much of that which he has taken as has not been held invalid would certainly create uncertainty and would threaten the vice of vagueness which we frequently encounter in the oath area. This problem is expressed by the Supreme Court in *Baggett* as follows:

> "The uncertain meanings of the oaths require the oath-taker—teachers and public servants—to 'steer far wider of the unlawful zone' * * * than if the boundaries of the forbidden areas were clearly marked. Those with a conscientious regard for what they solemnly swear or affirm, sensitive to the perils posed by the oath's indefinite language, avoid the risk of loss of employment, and perhaps profession, only by restricting their conduct to that which is unquestionably safe. Free speech may not be so inhibited." Baggett v. Bullitt, supra, 377 U.S. at 372, 84 S.Ct. at 1323. See also Keyishian v. Regents of the University of New York, supra, 385 U.S. at 684, 87 S.Ct. 675.

In view of the mentioned considerations, we must hold that the new oath which we have upheld be applied equally to all. To apply it to new employees alone constitutes an invalid and discrim-

---

extending more protection to citizen-critics than to legislators. Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office; also so they

may be represented in governmental debates by the person they have elected to represent them." Bond v. Floyd, supra, 87 S.Ct. at 349.

3. Keyishian v. Board of Regents of the University of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

inatory classification and thereby violates the equal protection clause of the Fourteenth Amendment.

## IV

Plaintiffs' final contention is that the failure on the part of the Regents to create hearing procedures in conjunction with the oath violates procedural due process as guaranteed by the Fourteenth Amendment.

We note at the outset that procedural due process does not demand a formal hearing in every instance and certainly not in connection with every dismissal from public employment. Cafeteria and Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Where the dismissal may affect the person's reputation the courts are more apt to require a hearing as a safeguard against arbitrary dismissal. See Birnbaum v. Trussell, 371 F.2d 672, 678 (2nd Cir. 1966). Similarly where dismissal may reflect upon one's loyalty the courts require a hearing. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Slochower v. Board of Higher Education of City of New York, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).[4]

Ordinarily a hearing serves to bring the person threatened with dismissal face to face with his accusers whereby he can cross-examine them. It also gives him an opportunity to present his side of the case and permits a test of the merits. However, these salutary objects are not present in the case of the failure to take or subscribe to an oath. The action itself is final and conclusive. No amount of hearing can change the fact that the person has refused to take it. Thus, the purpose usually served by the hearing is not served in this kind of a case. True the accused can make a record and expound his reasons, but this is for public consumption rather than for the authorities. This latter objective could be accomplished by issuing a statement to the press. Compare Heckler v. Shepard, 243 F.Supp. 841, 847 (E.D.Idaho 1965).[5] Therefore, in the case at bar where the oath is as we have said simple, direct and unambiguous, the hearing as to why the accused refused to take it would be virtually meaningless. The examiners would be called upon to merely hear the defendant's reasons for refusal, but it could not change the result either at the administrative or court level. For these reasons we disagree with the Plaintiffs' contention that there is a procedural due process deprivation growing out of the failure to provide a hearing.

\*    \*    \*    \*    \*    \*

"It should be noted at the outset that the complete statutory oath has several distinct aspects. First among these is the requirement to swear (or affirm) allegiance to the United States of America and to the State of Idaho. We do not understand that this allegiance aspect of the oath is challenged here by others than the plaintiffs who are aliens." Supra at 844.

The implication which may arise in the public mind from one's failure to subscribe to specific disclaimers of subversive activity may be far different than the public attitude toward one who refuses to take a simple support oath. Refusal in the first instance may give rise to suspicions of disloyalty. In the latter situation, refusal to subscribe to the oath will more likely cause one to be suspected of eccentricity than subversion.

---

4. However, it is interesting to note that in Cafeteria Workers v. McElroy, supra, where a 5–4 majority held that dismissal without a hearing did not violate due process, dismissal for "security reasons" was not a case " \* \* \* where government action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity." Supra 367 U.S. at 898, 81 S.Ct. at 1750.

5. Heckler v. Shepard is distinguishable on its facts, since the oath there in question involved, in addition to a positive support provision, an extensive series of negative disclaimer provisions, relating to past activities as well as future conduct. The court's attention seems to be directed primarily to the disclaimer provisions rather than the positive support provision:

Having concluded that the oath in question is valid and having determined that the sole deficiency is that noted under point III of this opinion, namely the deficiency inherent in requiring new employees to take the oath and excusing the old employees from doing so, the Defendants are granted thirty days within which to decide whether to require uniform compliance by old as well as new employees. If the Defendants fail to make this administrative change the Court will, at the end of the mentioned period of time, grant the relief which is here sought. Jurisdiction of the case is retained for this limited purpose. In all other respects the Plaintiffs' demands for relief are denied.