Morton K. OHLSON et al., Plaintiffs,

v.

Kenneth PHILLIPS, President, Metropolitan State College; A. Ray Chamberlain, President of Colorado State University; Frederick P. Thieme, President, University of Colorado; Duke W. Dunbar, Attorney General of the State of Colorado; Bryon W. Hansford, Commissioner of Education for the State of Colorado; Robert D. Gilberts, Superintendent of Schools, School District No. 1, Denver, Colorado; Dr. John A. Marvel, President, Adams State College; Dr. Darrell Holmes, President, Colorado State College; Dr. Harlan Bryant, President, Western State College; Dr. J. Victor Hopper, President, Southern Colorado State College, Defendants.

Civ. A. No. C–1535.

United States District Court
D. Colorado.

Oct. 16, 1969.

William F. Reynard, Denver, Colo., for plaintiffs.

Alperstein & Plaut P. C., by Susan Graham Barnes, Lakewood, Colo., Craig Murdock, Denver, Colo., for American Civil Liberties Union.

Duke W. Dunbar, Atty. Gen., Denver, Colo., Michael T. Haley, Asst. Atty. Gen., Denver, Colo., John P. Holloway, Asst. Atty. Gen., Boulder, Colo., John E. Bush, Asst. Atty. Gen., c/o Colorado State University, Fort Collins, Colo., for defendants, Kenneth Phillips, A. Ray Chamberlain, Frederick P. Thieme, Duke W. Dunbar, Bryon W. Hansford, Dr. John A. Marvel, Dr. Darrell Holmes, Dr. Harlan Bryant and Dr. J. Victor Hopper.

Henry, Cockrell, Quinn & Creighton, by Victor Quinn, Denver, Colo., for defendant Robert D. Gilberts.

Before BREITENSTEIN, Circuit Judge, and THEIS and DOYLE, District Judges.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, Judge.

Plaintiffs herein are teachers in the state universities and colleges in Colorado[1] and in the Denver public schools. They seek an injunction restraining the implementation of a loyalty oath required to be taken by every person employed to teach in state public schools or institutions of higher education.

Jurisdiction is based upon 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. Plaintiffs, in addition to seeking injunctive relief, also pray for declaratory judgment pursuant to 28 U.S.C. § 2201. The case has been heard by a three-judge District Court convened pursuant to 28 U.S.C. § 2281 and now stands submitted.

The oath, which is prescribed by state statute, reads as follows:

I solemnly (swear) (affirm) that I will uphold the constitution of the United States and the constitution of the State of Colorado, and I will faithfully perform the duties of the position upon which I am about to enter.[2] No person may enter into or continue teaching duties in a state school unless he takes the above oath or affirmation.

---

1. Plaintiffs teach at Metropolitan State College in Denver, Colorado State University in Fort Collins, University of Colorado in Boulder, Colorado State College in Greeley, Western State College in Gunnison, Southern Colorado State College in Pueblo, and Adams State College in Alamosa.

2. The oath provisions appear in 63 C.R.S. §§ 123-17-6 to 17-8, as amended.

The complaint alleges that the oath requirement in the statute is unconstitutional in that: (1) it is vague and overbroad and in violation of the First Amendment rights of freedom of speech and association; (2) it is an arbitrary classificatin of teachers in violation of the Equal Protection clause of the Fourteenth Amendment; (3) it deprives plaintiffs of due process of law in that it is vague, overbroad and lacking in procedural safeguards; (4) the law is *ex post facto,* a bill of attainder and an impairment of existing contractual rights.

## I

Loyalty oaths prescribed for teachers in Colorado state educational institutions have been before this Court in Gallagher v. Smiley, 270 F.Supp. 86 (D.Colo.1967) and in Hosack v. Smiley, 276 F.Supp. 876 (D.Colo.1967), aff'd, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968). In *Gallagher,* the oath was struck down as being violative of due process in that it was unduly vague, uncertain and broad. The oath at issue in *Hosack* was promulgated in an effort to comply with the *Gallagher* decision. That oath provided:

> I solemnly swear or affirm that I will support the Constitution of the State of Colorado and of the United States of America and the laws of the State of Colorado and of the United States.

This oath was held to be valid in *Hosack* as against the contentions that it violated the plaintiffs' freedom of expression and violated due process. Plaintiffs argued that it was unduly vague and did not provide hearing procedures for those who were dismissed for refusal to take the oath.

The present oath is substantially similar to that in *Hosack.* The oath in the instant case differs only in the deletion of the reference to the laws of the United States and the State of Colorado, in the addition of the affirmation of fidelity to duty and in the substitution of the word "uphold" for "support".

Hosack v. Smiley, *supra,* is, therefore, controlling on the issue of vagueness and overbroadness as far as the oath refers to the upholding of the constitutions. Plaintiffs attempt to distinguish this oath from that in *Hosack* by pointing out that "uphold" has been defined as "to * * * defend, as against opposition or criticism".[3] Plaintiffs contend that use of the word "uphold" instead of "support" distinguishes this case from *Hosack* and results in the oath being vague.[4] There is little substance in this argument as shown by further definitions which treat "support" much like "uphold". It is defined as "to actively promote the interests or cause of * * *"[5] and "to uphold or defend as valid".[6] Giving the words their plain meaning then, there is not such a significant difference between "support" and "uphold" so as to warrant the argued distinction between the two oaths.

Following *Hosack,* therefore, the oath in the instant case is not unduly vague, but is:

> plain, straightforward and unequivocal. A person taking it is not left in doubt as to his undertaking. The obligation assumed is one of simple recognition that ours is a government of laws and not of men. Hosack v. Smiley, *supra* at 878.

It follows from the above that, if the oath in question is a mere recognition of our system of organic or constitutional

---

3. Random House Dictionary of the English Language (unabridged ed. 1967).

4. To illustrate this alleged vagueness plaintiffs ask rhetorically whether, in "upholding" a constitution, a professor is prohibited from criticizing it; whether he is bound to defend it against the criticism of his students; whether he is obligated to affirmatively advocate its virtues. Our answer is that the present oath is an affirmation of belief in organic law and disbelief in the use of force to overthrow the government.

5. Webster's Third New International Dictionary (unabridged ed. 1961).

6. *Id.*

law, it is not overbroad. It is not a sweeping and improper invasion of plaintiffs' rights of free association and expression. N.A.A.C.P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed. 2d 405 (1963). As we said in *Hosack* on this point:

> Recognition of and respect for law in no way prevents the right to dissent and question repugnant laws. Nor does it limit the right to seek through lawful means the repeal or amendment of state or federal laws with which the oath taker is in disagreement. Support for the constitutions and laws of the nation and state does not call for blind subservience. 276 F.Supp. at 879.

### II

Plaintiffs' next claim that the provision in the oath providing that they will "faithfully perform the duties" of their positions is equally vague, overbroad and constitutionally infirm. We cannot agree. In Knight v. Board of Regents of the University of the State of New York, 269 F.Supp. 339 (S.D.N.Y.1967), aff'd, 390 U.S. 36, 88 S.Ct. 816, 19 L.Ed. 2d 812 (1968), a similar oath provision was upheld.[7] We agree with the court in *Knight* that a state can reasonably ask teachers in state schools to subscribe to professional competence and dedication. This portion of the oath merely reflects the significant interest of the state in assuring the careful selection of teachers, and imposes no restrictions on a teacher's political expressions. It is certain that there is no right to be unfaithful in the performance of duties, and hence this undertaking is implicit.

### III

Plaintiffs' argument that the statute violates due process in that it does not provide for a hearing upon dismissal for refusal to take the oath was also ruled on in *Hosack*. We said in that case that due process does not demand a hearing in connection with every dismissal from public employment. A teacher who is dismissed for refusal to take the oath has no need to be faced with his accuser or given an opportunity for cross-examination, since "No amount of hearing can change the fact that the person refused to take [the oath]". 276 F.Supp. at 881. His reasons for refusal are not relevant: "[W]here the oath is as we have said simple, direct and unambiguous, the hearing as to why the accused refused to take it would be virtually meaningless". 276 F.Supp. at 881.

### IV

Plaintiffs further claim that the oath deprives them of equal protection of the laws by arbitrarily classifying teachers as the sole group of public employees required to take the oath. This, of course, is not accurate. The oath is an almost universal requirement of all public officials, including lawyers and judges, and it cannot be truthfully said that teachers are being picked on. Teachers would, however, be the first to admit that they work in a sensitive area in which they can shape the attitudes of the students with whom they come in contact. The state has a vital concern in the educational process, and has the right not only to screen teachers as to their fitness, Adler v. Board of Education of the City of New York, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517, 27 A.L. R.2d 472 (1952), but also to be concerned about possible advocacy of overthrow of the government by force and violence.

Plaintiffs argue, however, that the oath should be applied to *all* state employees. There is no constitutional requirement that a regulation must reach every class to which it might be applied. Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718,

---

7. The relevant portion of that oath read: "I will faithfully discharge, according to the best of my ability, the duties of the position of * * *, to which I am now assigned."

94 L.Ed. 985 (1950). As long as the oath is reasonable as applied to teachers, there is no requirement that it be applied to all other groups to which its application would be equally reasonable.

## V

■ Nor, as plaintiffs contend, does the oath in question impair the obligation of their employment contracts in contravention of Art. I, Sec. 10 of the Constitution. They argue that the statute imposes upon them an additional burden not contemplated at the time of entering into the contracts,[8] and that tenure rights are taken from the tenured plaintiffs.

■ The prohibition against the obligation of contracts is not absolute.[9] All contracts implicitly include the reservation by the state of its sovereign power to protect the vital interests of its people—the public health, welfare and morals.[10] As long as this reserved power is exercised for a public end, by means which are reasonably adapted to the accomplishment of that end, the power may not be restricted by individual contractual obligations. Treigle v. Acme Homestead Ass'n, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575, 101 A.L.R. 1284 (1936). There can be no doubt that the state's interest in the loyalty and qualifications of its teachers is a legitimate end. Adler v. Board of Education of City of New York, *supra*. The means of achieving that end are reasonable, especially in light of our decision that the oath is not constitutionally objectionable. Any contractual impairment which might exist is not an unconstitutional impairment since it is insubstantial when balanced against the legitimate state interest being pursued. *See* City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965).

## VI

■ Plaintiffs' final contention is that the oath statute constitutes both a bill of attainder and an *ex post facto* law. Punishment is a prerequisite of these forbidden legislative acts. The statute in the instant case imposes no punishment, as it is merely a general regulation providing standards of qualification and eligibility for a position. The imposition of such qualifications by the legislature does not amount to a "punishment". Garner v. Board of Public Works, 341 U.S. 716, 722, 71 S.Ct. 909, 913–914, 95 L.Ed. 1317 (1951); Ex parte Garland, 4 Wall. 333, 379–80, 18 L.Ed. 366, 370 (1867). Thus, the statute in question is neither *ex post facto* nor a bill of attainder.

■ We are unable to fully discern why the plaintiffs find the taking of any oath so obnoxious. We are led to believe that they entertain uncertainty as to what they are promising or perhaps reservations as to its significance. These reasons do not, however, furnish a basis for holding the statute invalid. The decision as to its worth or value is for the legislature, and we are not prepared to say that it does not serve a purpose any more than we could say that the Constitution itself is valueless. The oath is rooted as deeply in our system as is the Constitution. The latter, of course, not only represents a system of government, it is as well a symbol or hallmark of our democracy. As such it serves to give us some measure of cohesiveness, and in that respect serves a substantial purpose. This explanation is found in the concluding paragraph of Chief Justice Vinson's opinion in Ameri-

---

8. This statement is factually true as to all plaintiffs except those at the University of Colorado, where there has been an oath requirement since 1921.

9. City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965); Treigle v. Acme Homestead Ass'n, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575, 101

A.L.R. 1284 (1936); Home Building & Loan Ass'n, v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481 (1934).

10. City of El Paso v. Simmons, *supra*; Home Building & Loan Ass'n v. Blaisdell, *supra*.

can Communications Ass'n CIO., et al. v. Douds, 339 U.S. 382, 415, 70 S.Ct. 674, 692, 94 L.Ed. 925 (1950):

Clearly the Constitution permits the requirement of oaths by officeholders to uphold the Constitution itself. The obvious implication is that those unwilling to take such an oath are to be barred from public office. For the President, a specific oath was set forth in the Constitution itself. Art. II, § 1. And Congress has detailed an oath for other federal officers. Obviously the Framers of the Constitution thought that the exaction of an affirmation of minimal loyalty to the Government was worth the price of whatever deprivation of individual freedom of conscience was involved.

\* \* \* \* \* \*

Having concluded that the statute is valid and that the plaintiffs' case is without merit, it is

Ordered that the Clerk prepare a formal judgment in favor of defendants and against plaintiffs dismissing the complaint and the cause of action.