**The SOCIALIST WORKERS PARTY et al.**

v.

**Attorney General Crawford MARTIN and Mayor Louis Welch, Individually and in Their Representative Capacities.**

**Civ. A. No. 71-H-1181.**

United States District Court,
S. D. Texas,
Houston Division.

July 31, 1972.

---

Ronald Cohen, American Civil Liberties Union, Houston, Tex., for plaintiffs.

W. O. Shultz, Asst. Atty. Gen., Austin, Tex., for defendant Atty. Gen. Crawford Martin.

Joseph G. Rollins, Senior Asst. City Atty., Houston, Tex., for defendant Louis Welch.

Before INGRAHAM, Circuit Judge, and SINGLETON and SEALS, District Judges.

## OPINION

SINGLETON, District Judge:

Plaintiffs, as candidates for city office, brought this class action as representatives of all candidates or nominees for any public office in the State of Texas. This action is based on 42 U.S.C. § 1983; 28 U.S.C. § 1343(3), (4), 2201 and the First and Fourteenth Amendments to the Constitution.

Plaintiffs pursued an arduous course in running for office. Prior to filing this action to preserve their place on the ballot as candidates for the municipal elections in the City of Houston, they filed Civil Action No. 71–H–462 attacking certain city charter provisions. After protracted litigation, an order of Justice Stewart placed plaintiffs' names on the ballot. However, before having their names placed on the ballot, plaintiffs were asked to sign a loyalty oath as required of all state candidates for office. Tex.Elec.Code art. 6.02, V.A.T.S. Plaintiffs refused to sign the oath on the basis that it requires much more of a candidate than the support of the United States Constitution which is all that is called for in Article VI thereof. After a hearing in this court, the names of the candidates were allowed to remain on the ballot without signing the required oath. The question of the validity of the oath remains open for consideration and decision.

The statute in question requires all candidates for public office in Texas to take the following oath:

"I _____, of the County of _____, State of Texas, being a candidate for the office · of _____ do solemnly swear that I believe in and approve of our present representative form of government, and, if elected, I will support and defend our present representative form of government and will resist any effort or movement from any source which seeks to subvert or destroy the same or any part thereof, and I will support and defend the Constitution and laws of the United States and of the State of Texas." Tex.Elec.Code art. 6.02.

■ Assuming that an oath may be required of a candidate as it may be of an official already elected, the constitutional validity of the last part of the oath which reads ". . . and I will support and defend the Constitution and laws of the United States and of the State of Texas." cannot seriously be questioned. Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). Article VI of the United States Constitution provides for such an affirmation of support of the existing laws and constitution:

"The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." U.S.Const. art. VI, cl. 3

It is the remaining portion of the oath which troubles this court and toward which the thrust of this opinion is directed. This writer feels that requiring a candidate to "believe in and approve of our present representative form of government" creates a chilling effect on political beliefs and ideas at the very mo-ment of a public election when a democratic society needs to freely and openly explore all possible political theories and beliefs. Surely a citizen and a candidate can simultaneously support and uphold the Constitution as the framers originally proscribed, and at the same time not "believe in and approve of" the detailed organization of "our present representative form of government" and be working and campaigning to change *that* form of government all within the original format of our democratic society.

■ The use of the oath in question except that part which requires a candidate to "support and defend the Constitution and laws of the United States and of the State of Texas" creates a chilling effect on the constitutionally protected right of a citizen to seek elective public office. *But see* Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

The oath and the administration of such an oath in New York for bar candidates were upheld, because they did not result in such a chilling effect on the beliefs of the parties involved. Law Students Research Council v. Wadmond, 401 U.S. 154, 167, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

The Supreme Court recently ruled on the validity of a statutory loyalty oath which a substitute classroom teacher refused to take in Florida. The teacher was later dismissed for this action. Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971). The two clauses of the oath in question were very similar to those of the instant case and read as follows: (1) "that I will support the Constitution of the United States and of the State of Florida" and (2) "that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence." The High Court held that the first clause (1) was valid, but struck the second clause (2) since it resulted in the teacher's summary dismissal from public employment without a hearing or inquiry as required by the Due Process Clause. The majority opin-

ion stated that the validity of the first clause of the Florida oath is without question citing: Knight v. Board of Regents, 269 F.Supp. 339, aff'd per curiam 390 U.S. 36, 88 S.Ct. 816, 19 L.Ed.2d 812 (1968), Hosack v. Smiley, 276 F.Supp. 876, aff'd per curiam, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968). However, in a concurring opinion Justices Marshall, Douglas, and Brennan expressed more than a disapproval on due process grounds of the second clause (2):

"However, in striking down the latter oath, the Court has left the clear implication that its objection runs, not against Florida's determination to exclude those who 'believe in the overthrow,' but only against the State's decision to regard unwillingness to take the oath as conclusive, irrebuttable proof of the proscribed belief. Due process may rightly be invoked to condemn Florida's mechanistic approach to the question of proof. But in my view it simply does not matter what kind of evidence a State can muster to show that a job applicant 'believe[s] in the overthrow.' For state action injurious to an individual cannot be justified on account of the nature of the individual's beliefs, whether he 'believe[s] in the overthrow' or has any other sort of belief. 'If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion . . . .' [West Virginia State] Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628, 1639, [147 A.L.R. 674] (1943)." 403 U.S. 209, 91 S.Ct. 1774, 29 L.Ed.2d 421.

Surely, no less of an objection can be lodged against the requirement of an oath calling for a candidate for elective public office to "believe in and approve of" a political idea or to "support and defend our present representative form of government."

Justices Black and Douglas expressed the very essence of such an objection in Speiser v. Randall, 357 U.S. 513, 530, 78 S.Ct. 1332, 1353, 2 L.Ed.2d 1460 (1958 concurring opinion) (an oath of nonbelief in overthrow of the government for tax exemptions held invalid):

"I am convinced that this whole business of penalizing people because of their views and expressions concerning government is hopelessly repugnant to the principles of freedom upon which this Nation was founded and which have helped to make it the greatest in the world. As stated in prior cases, I believe 'that the First Amendment grants an absolute right to believe in any governmental system, [to] discuss all governmental affairs and [to] argue for desired changes in the existing order. This freedom is too dangerous for bad, tyrannical governments to permit. But those who wrote and adopted our First Amendment weighed those dangers against the dangers of censorship and deliberately chose the First Amendment's unequivocal command that freedom of assembly, petition, speech and press shall not be abridged. I happen to believe this was a wise choice and that our free way of life enlists such respect and love that our Nation cannot be imperiled by mere talk.' Carlson v. Landon, 342 U.S. 524, 555–556, 72 S. Ct. 525, 542, 96 L.Ed. 547, 568 (dissenting opinion).

\* \* \* \* \* \*

"Since the time that Alexander Hamilton wrote concerning these oaths, the Bill of Rights was adopted; and then much later came the Fourteenth Amendment. As a result of the latter a rather broad range of liberties was newly guaranteed to the citizen against state action. Included were those contained in the First Amendment—the right to speak freely, the right to believe what one chooses, the right of conscience. Stromberg v. [People of State of] California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117

[73 A.L.R. 1484]; Murdock v. [Commonwealth of] Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 882, 891, 87 L.Ed. 1292 [146 A.L.R. 81]; Staub v. [City of] Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302. Today what one thinks or believes, what one utters and says have the full protection of the First Amendment. It is only his actions that government may examine and penalize. When we allow government to probe his beliefs and withhold from him some of the privileges of citizenship because of what he thinks, we do indeed 'invert the order of things,' to use Hamilton's phrase. All public officials—state and federal—must take an oath to support the Constitution by the express command of Article VI of the Constitution. And see Gerende v. Board of Supervisors of Elections, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745. But otherwise the domains of conscience and belief have been set aside and protected from government intrusion. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 [147 A.L.R. 674]. What a man thinks is of no concern to government. 'The First Amendment gives freedom of mind the same security as freedom of conscience.' Thomas v. Collins, 323 U.S. 516, 531, 65 S.Ct. 315, 323, 89 L. Ed. 430, 440. Advocacy and belief go hand in hand. For there can be no true freedom of mind if thoughts are secure only when they are pent up." 357 U.S. 531, 78 S.Ct. 1353, 2 L.Ed. 1476, 1478.

The first two clauses of the Texas oaths are exclusionary tests and are designed to prevent those of less popular beliefs from holding office or placing their names and ideas before the voters as prospective elective officers of the state. This conclusion is unmistakably clear to this writer. As support we need only look at that part immediately following the prescribed oath, namely, art. 6.02(d), which reads as follows: "The name of no candidate or nominee of any political party whose principles include any thought or purpose of setting aside representative form of government and substituting therefor any other form of government shall be permitted on the official ballot."

Neither one of the named plaintiffs nor the class of persons they alleged to represent are members of the Communist Party, of the Fascist Party, or the Nazi Party, and, therefore, the constitutionality of 6.02(d) is not before us. However, it may be assumed that the same would be unconstitutional under the teachings of Law Students Research Council v. Wadmond, *supra* at 166, 91 S.Ct. 720, 27 L.Ed.2d 749, and other such cases cited therein, relating to oaths concerning associational activities and organizational memberships because of the lack of any procedural safeguards and the use of any "knowing" tests or "specific intent" criteria. Further, we must, it seems to this writer, keep in mind the tenor of the era when these acts were passed, namely, immediately before World War II and the decade following the War aptly remembered as the McCarthy era. Consequently, this writer must assume that the legislature meant exactly what it wrote, when it enacted the oath in question here and had the intention of keeping off the ballot any candidate whose political beliefs encompassed the beliefs of either the Socialist Party or the Fascist Party or the Nazi Party or the Communist Party. Accordingly, these two clauses of the oath must fall as infringements of the right to free speech, the right to freedom of association, the right to hold office and the right to vote for those seeking office. The oath under attack here is not like the affidavit approved in Gerende v. Board of Supervisors of Elections of Baltimore City, 341 U.S. 56, 57, 71 S.Ct. 565, 95 L.Ed. 745 (1951) which required a candidate to state that as a candidate for office he was not a person who was engaged "in one way or another in the attempt to overthrow the government by force or violence," and

that he was not knowingly a member of an organization engaged in such an attempt. The present case poses no question of organizational membership or plots, it is purely an issue of a man's beliefs which certainly remain within the private domain of his conscience.

The result reached here is not contrary to the majority opinion as explained by Chief Justice Burger in Cole v. Richardson, 405 U.S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 decided April 18, 1972. In that case Richardson, an employee at the Boston State Hospital, was terminated for refusing to take the following oath:

"I do solemnly swear (or affirm) that I will uphold and defend the Constitution of the United States of America and the Constitution of the Commonwealth of Massachusetts and that I will oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence, or by any illegal or unconstitutional method."

The majority (consisting of the Chief Justice and Justices Stewart, White, and Blackmun—Justices Powell and Rehnquist did not participate) upheld the oath as constitutionally permissible. However, Chief Justice Burger in his opinion pointed out:

"We have made clear that neither federal nor state governments may condition employment on taking oaths which impinge rights guaranteed by the First and Fourteenth Amendments respectively, as for example, those relating to political beliefs. Law Students [Civil Rights] Research Council v. Wadmond, 401 U.S. 154 [91 S.Ct. 720, 27 L.Ed.2d 749] (1971); Baird v. State Bar of Arizona, 401 U.S. 1 [91 S.Ct. 702, 27 L.Ed.2d 639] (1971); Connell v. Higgenbotham, 403 U.S. 207, 209 [91 S.Ct. 1772, 1774, 29 L. Ed.2d 418] (1971) (*Marshall*, J., concurring). Nor may employment be conditioned on an oath that one has not engaged, or will not engage, in

protected speech activities such as the following: criticizing institutions of government; discussing political doctrine that approves the overthrow of certain forms of government; and supporting candidates for political office."

Most significantly, Justices Stewart and White in their concurring opinion in Cole v. Richardson, *supra,* said:

"When the case was here before, Mr. Justice Harlan expressed the view that '[t]his oath does not impinge on conscience or belief, except to the extent that oath taking as such may offend particular individuals.' Cole v. Richardson, 397 U.S. 238, 241 [90 S. Ct. 1099, 1101, 25 L.Ed.2d 275] (concurring opinion). We agree."

■■ Therefore, it appears clear to this writer that oaths requiring support of particular beliefs are constitutionally impermissible as well as those oaths that do more than require a "support of" and a "defense of" the United States Constitution and that of the particular state involved. We are not here dealing with associational activities either in the past or in the future. As previously stated by this writer in Duncantell v. City of Houston, 333 F.Supp. 973 (S.D.Tex. 1971):

"The right to vote is a right which is at the heart of our system of government. Likewise, the right to run or be a candidate is inextricably woven into the fabric of the First Amendment. Consequently, any abridgment of that right must receive careful judicial scrutiny and the state or city has the burden of justifying through proof of a compelling interest any restraints on these precious rights."

It is interesting to note that the Constitution of the State of Texas requires of all members of the legislature and all other elective officers of the State to take an oath that is materially and substantially less stringent than that required of candidates seeking elective of-

**1138**

fices. *See* Tex.Const. art. 16 § 1 (Appendix), Vernon's Ann.St.

The City has not shown any proof of such a compelling interest. To require a candidate for elective public office or a candidate seeking that office to swear that he or she "believes in" any "present representative form of government" or that they will "resist" any efforts or movements to subvert or destroy any such representative forms of government is repugnant to the First Amendment and seems to this writer to be inconsistent with the many prior decisions of the Supreme Court on this question.

Accordingly, any part of the oath before us except the part that says "I do solemnly swear that I will support and defend the Constitution and laws of the United States and of the State of Texas" is constitutionally impermissible. Thus, by order of this court, the section reading "I believe in and approve of our present representative form of government, and, if elected, I will support and defend our present representative form of government and I will resist any effort or movement from any source which seeks to subvert or destroy the same or any part thereof, and" is struck from the oath leaving the rest intact.

### APPENDIX

### ARTICLE XVI

### GENERAL PROVISIONS
§ 1. Official Oath

Section 1. Members of the Legislature, and all other elected officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:

"I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State; and I furthermore solemnly swear (or affirm), that I have not directly nor indirectly paid, offered, or promised to pay, contributed, nor promised to contribute any money, or valuable thing, or promised any public office or employment, as a reward for the giving or withholding a vote at the election at which I was elected. So help me God."

The Secretary of State, and all other appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:

"I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State; and I furthermore solemnly swear (or affirm), that I have not directly nor indirectly paid, offered, or promised to pay, contributed, nor promised to contribute any money, or valuable thing, or promised any public office or employment, as a reward to secure my appointment or the confirmation thereof. So help me God." As amended Nov. 6, 1956. Tex.Const. art. 16 § 1

INGRAHAM, Circuit Judge (dissenting):

I agree with my brothers that that part of the oath which reads "I do solemnly swear that I will support and defend the Constitution and laws of the United States and of the State of Texas" is constitutional, but dissent from their holding that all of the remainder of the Texas oath under attack is constitutionally impermissible.

The concept of the requirement of an oath of one charged with public duty is deeply rooted in our tradition and history. The original draft of the Constitution itself *requires* oaths. Art. II, Sec. 1 of the Constitution requires a specific oath (or affirmation) before the President can enter upon the execution of his office. And by the express terms of the Constitution, Art. VI, Clause 3, an oath is required of Senators and Representatives and of members of the several State Legislatures and all executive and judicial officers, both of the United

States and of the several States to support the Constitution. This requirement is quoted in full in the opinion of the majority which renders it unnecessary to be repeated here. But Art. VI does not require that such officers of the United States and of the several States take the oath there required and none other. The requirements of Art. VI are not unlimited. The framers did consider prohibitions. They provided a prohibition against a religious test in an oath or affirmation, but they saw fit not to provide other prohibitions.

Before entering upon our judicial duties, my brothers and I each took the oath required by Title 28, Sec. 453, United States Code. This oath is not limited to the bare requirement of Art. VI that we support the Constitution. It does respect the prohibition against a religious test.

I do not find the Texas oath under attack to be in conflict with that part of the oath of which my brothers approve and the Constitution expressly requires. If the Texas oath is subject to any fault, it is of redundance. I find no conflict with that part of the oath that reads "do solemnly swear that I believe in and approve of our present representative form of government, . . . I will support and defend our present representative form of government and I will resist any effort or movement from any source which seeks to subvert or destroy the same or any part thereof." It is but another way of saying "I do solemnly swear that I will support and defend the Constitution and laws of the United States and of the State of Texas." Our Constitution gives us a representative form of government, and to swear a belief in our present representative form of government and to support and defend it and to resist efforts or movements which seek to subvert or destroy it is but another way of swearing to support and defend the Constitution. If it is not, the oath to support and defend the Consti-

tution is empty. Its redundance is akin to the language of a general warranty deed that reads "grant, sell and convey," or of a contract that reads "promise and agree." Nor do I find it chilling on political beliefs.

An oath to support and defend our *present* representative form of government is not a rigid one because our *present* representative form of government is flexible, fluid and subject to change. Our Constitution, by its express terms, provides for amendment. The procedures for amendment are well known. The Constitution has been amended many times. It has been amended and unamended. And we can expect that it will be amended in the future to express the changing will of the people brought on by changing conditions. And our representative government changes with each biennial congressional election and with congressional reapportionment which the Constitution itself requires each decade.

The Supreme Court in a recent case, Cole v. Richardson, 405 U.S. 676, 92 S. Ct. 1332, 31 L.Ed.2d 593 (1972), upheld the constitutionality of a Massachusetts statute requiring an oath of all public employees. The Massachusetts oath there under attack is very similar to the Texas oath here and now under attack. It reads:

> "I do solemnly swear (or affirm) that I will uphold and defend the Constitution of the United States of America and the Constitution of the Commonwealth of Massachusetts and that I will oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence, or by any illegal or unconstitutional method."

Respectfully dissenting, I would hold that the Texas oath under attack, as in *Cole,* is constitutionally permissible, that plaintiffs' complaint is without merit and would dismiss it.