Sari Knopp **BIKLEN**, Plaintiff,

v.

**BOARD OF EDUCATION, CITY SCHOOL DISTRICT, SYRACUSE, NEW YORK, et al., Defendants.**

No. 71–CV–108.

United States District Court, N. D. New York.

Nov. 9, 1971.

Marvin M. Karpatkin, New York City (John E. Le Moult, New York City, Faith A. Seidenberg, Syracuse, N. Y., Burt Neuborne, New York Civil Liberties Union, New York City, of counsel), for plaintiff.

Edward P. Kearse, Corp. Counsel, Syracuse, N. Y. (James M. Anderson, Asst. Corp. Counsel, of counsel), for defendants.

Louis J. Lefkowitz, Atty. Gen., State of New York (Ruth Kessler Toch, Sol. Gen., John Q. Driscoll, Julius L. Sackman, Asst. Attys. Gen., Albany, N. Y., of counsel), intervenor, pro se.

Before MULLIGAN, Circuit Judge, FOLEY, Chief District Judge, and PORT, District Judge.

MULLIGAN, Circuit Judge:

Section 3002 of the New York Education Law, McKinney's Consol. Laws, c. 16, requires any United States citizen who serves as a "teacher, instructor or professor in any school or institution in the public school system of the state or in any school, college, university or other educational institution in [the] state, whose real property, in whole or in part, is exempt from taxation * * *" to take an oath or make an affirmation to support the federal and state constitutions and to perform his duties as a teacher to the best of his ability. In lieu of this oath or affirmation, the teacher may "pledge and declare" to the same effect.[1]

---

1. § 3002. Oath to support federal and state constitutions

It shall be unlawful for any citizen of the United States to serve as teacher, instructor or professor in any school or institution in the public school system of the state or in any school, college, university or other educational institution in this state, whose real property, in whole or in part, is exempt from taxation under section four of the tax law unless and until he or she shall have taken and subscribed the following oath or affirmation: "I do solemnly swear (or affirm) that I will support the constitution of the United States of America and the consti-

The following facts are stipulated: In July, 1970 plaintiff, Sari Knopp Biklen, was accepted for appointment as a probationary teacher-intermediate at the Martin Luther King, Jr. School in Syracuse, New York. She started to teach in September, and in December she was notified that among the items missing from her personnel folder was the requisite support oath or affirmation. On December 17, plaintiff was suspended from her position when she informed the Director of Personnel of the City School District that her religious and conscientious beliefs prevented her from signing the required oath or affirmation. On December 21, she spoke with the Superintendent of Schools who advised her that that she would be permanently dismissed if the oath or affirmation was not signed by the end of the forthcoming Christmas vacation. On December 30, she notified the Superintendent that she would not sign the oath or affirmation because of her religious and conscientious scruples. He informed her that she would be permanently dismissed on Jan-

uary 19, 1971. By letter dated January 15, 1971, the Superintendent advised Biklen that she could "pledge and declare" and in so doing could continue in her position with no loss of pay. This, plaintiff declined to do. She appeared at a public meeting of the Board of Education held on January 19 and fully explained her position. After listening to her reasons the Board unanimously voted that she be discharged.

Counsel have further stipulated that the plaintiff was dismissed from her position solely because she declined to take the prescribed oath or affirmation and that this refusal "is based upon her most deeply held religious beliefs and that those beliefs stem from and are part of her Quaker religion."

Plaintiff commenced this action for injunctive and declaratory relief, challenging the constitutionality of § 3002 of the Education Law, alleging jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and 42 U.S.C. § 1983. A three judge district court was convened pursuant to 28 U.S.C. §§ 2281 and 2284.

tution of the State of New York, and that I will faithfully discharge, according to the best of my ability, the duties of the position of ............... (title of position and name or designation of school, college, university or institution to be here inserted), to which I am now assigned."

The oath required by this section shall be administered by the president or other head of such school, college, university or institution, or by the officer or person, or in the case of a board or body by a member of the board or body, having authority to employ such person as a teacher, instructor or professor in such school, college, university or institution, and each is hereby authorized to administer it. The officer, person or member administering such oath shall cause a record or notation of the fact to be made in the books or records of the school, college, university or institution. In lieu of the oath administered by an officer, person or member, an employee may comply with the requirements of this section by subscribing and filing the following statement: "I do hereby pledge and declare that I will support the constitution of the United States and the constitution of the State of New York, and that I will

faithfully discharge the duties of the position of ............... according to the best of my ability." Such oath or statement shall be filed with the clerk of a school district or with such officer or employee of any such college, university or other educational institution that shall be designated for such purpose. Such oaths or statements shall be available for public inspection and for transmittal to the commissioner of education upon his request. It shall be unlawful for an officer, person or board having control of the employment, dismissal or suspension of teachers, instructors or professors in such a school, college, university or institution, to permit a person to serve in any such capacity therein in violation of the provisions of this section. This section shall not be construed to require a person to take such oath or to execute such statement more than once during the time he or she is employed in the same school, college, university or institution, though there be a change in the title or duties of the position.

The provisions of section sixty-two of the civil service law shall not apply to a person who is required to take the oath or execute the statement prescribed by this section.

The reasons why plaintiff objects to swearing or affirming are set forth in her personal statement which is attached as an exhibit to the complaint.[2] An examination of her statement reveals that her objections are obviously not only religious but secular as well. There has been historically staunch Quaker opposition to oath taking which has been voiced since George Fox himself refused to take the oath of allegiance in 1663.[3] The resistance of Quakers and other religious sects to swearing is the basis for the alternative of affirmation explicitly sanctioned in both the federal and state constitutions and in the statute involved herein.[4] There is no question that the plaintiff was afforded the opportunity in this case to make the affirmation which presumably would not be objectionable to the average Quaker conscience. However, it is clearly inappropriate to ruminate about the mixed socio-political, philosophical or personal objections of the plaintiff. She has stated that it is offensive to her religious

2. Personal Statement—Sari Knopp Biklen On December 18, 1970, I was suspended from my job as a 3rd/4th grade teacher at the Dr. Martin Luther King Jr. school for refusing to sign the loyalty oath required of New York State teachers. My decision was one of conscience.

I have tried to teach the children in my class that each of us has a conscience, and that we need to learn to listen to it and to act upon it. If I didn't act upon my conscience I would be a hypocrite. Children sense fairness—they know when the same rules apply to adults as well as to them.

The contents of the oath are irrelevant to me in my stand. I stand opposed in principle to all loyalty oaths.

1. I believe that loyalty oaths contradict individual freedoms of expression and belief guaranteed in the Bill of Rights.
2. I have a commitment to humanist ideals and values rather than to the state. Free man is not the creature of the state, the state is his creation.
3. Loyalty oaths have possible incriminating effects and were used for such purposes during the McCarthy era of the early 1950's.
4. Our commitment is best determined by our actions, rather than by our signature. My background as a Quaker has taught me to try to lead a meaningful life rather than to talk or to sign oaths about it.
5. Loyalty oaths have nothing to do with good teaching.
6. Loyalty oaths presume that people are guilty of being disloyal unless they have signed. Norman Whitney, a nationally known Quaker and a Syracusian, has written meaningfully on these dangers:

> "Growth occurs best in an atmosphere of community where mutual trust and confidence prevail. But the very structure of such community is destroyed by oath-taking. The wholesale requirement of oath-taking has the effect of an assumption of guilt until one is proven innocent. Our whole history has been based on the assumption of innocence until proven guilty. The effect of such a reversal is to create a climate of suspicion, mistrust and tale-bearing. It is devastating to normal healthy relations among the people of the community. It destroys confidence. In consequence, the net effect of the oath is to destroy the very security that it seeks to secure."

I am challenging this law because I see it as a potentially dangerous one—one which goes against the principles of freedom, liberty and democracy upon which our country was founded. I have a commitment to good education in general, and to the students in Room 205 at Dr. King School in particular. I also have a commitment to freedom and justice for all people. I will not sign an oath which could limit these freedoms.

3. See W. W. Comfort, Quakers in the Modern World 135–37 (1949).

4. See, e. g., Maryland Const. (Declaration of Rights) § 36 (1776); (1797) Maryland Acts ch. 118 (which provided: "[T]he people called Quakers, those called Nicolites, or New Quakers, those called Tunkers, and those called Menonists, holding it unlawful to take an oath on any occasion, shall be allowed to make solemn affirmations as witnesses * * *."); King v. Fearson, 14 Fed.Cas. 520 (No. 883) (C. C.D.C.1827). See also 1 U.S.C. § 1. The United States and New York Constitutions provide for affirmations in lieu of oaths of support. U.S.Const. art. II, § 1, cl. 8; id. art. VI, cl. 3; N.Y.Const. art. XIII, § 1. See also U.S.Sup.Ct.R. 5 (4).

convictions and that it may also offend her in other ways is not our concern.[5] Neither are we concerned about her Quaker orthodoxy. It has been in fact stipulated and properly that her sincere religious conviction precludes affirmations as well as oaths and we should not and cannot avoid the issue by finding that her views on this subject are not shared by any, some, or all of her co-religionists.

■ With all respect for Sari Knopp Biklen's sincerity and conscientious conviction, we hold that her complaint must be dismissed. The constitutionality of this support oath has been repeatedly sustained by the Supreme Court of the United States against first amendment attacks by public school teachers. The first of these cases was Knight v. Board of Regents, 269 F.Supp. 339 (S.D.N.Y. 1967), aff'd per curiam, 390 U.S. 36, 88 S.Ct. 816, 19 L.E.2d 812 (1968), where this same statutory oath was sustained against a first amendment attack on free speech and association grounds. Rather than intimidation, plaintiff strangely finds encouragement in the opinion of Judge Tyler in the Souther District Court. In the Knight case, as in this, the plaintiff placed great reliance on West Virginia State Board of Education

v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), where the court held unconstitutional a state statute requiring school children to salute and pledge allegiance daily to the flag of the United States. The Knight court properly observed that the pledge of allegiance in Barnette was far more elaborate than the affirmation required there [6] and that the threatened criminal penalties were not at all comparable to the only sanction imposed, the loss of a teaching post.[7] The court also observed that no claim of religious freedom was made in the case before it as a further reason for finding Barnette inapposite. To suggest that the court would have decided differently had a religious claim been made, overlooks the two other major distinctions which the court carefully advanced in finding Barnette inapposite. The court's conclusion in Knight is pertinent here:

"A state does not interfere with its teachers by requiring them to support the governmental systems which shelter and nourish the institutions in which they teach, nor does it restrict its teachers by encouraging them to uphold the highest standards of their chosen profession. Indeed, it is plain that a state has a clear interest in assuring ' * * * careful and dis-

5. United States v. Ballard, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944). See Gray v. Gulf, Mobile & Ohio R. R., 429 F.2d 1064, 1066–1068 n. 4 (5th Cir. 1970), cert. denied, 400 U.S. 1001, 91 S. Ct. 461, 27 L.Ed.2d 451 (1971) ; Edwards & Kaplan, Religious Discrimination and the Role of Arbitration under Title VII, 69 Mich.L.Rev. 499, 614–17 (1971) ; Rabin, When is a Religious Belief Religious: United States v. Seeger and the Scope of Free Exercise, 41 Cornell L.Rev. 231 (1966) ; Comment, Defining Religion: Of God, the Constitution and the D.A.R., 32 U.Chi.L.Rev. 533 (1965).

6. The resolution found constitutionally impermissible in Barnette prescribed a ceremony in which the celebrant assumed a specified position while verbally pledging allegiance to a symbol which, according to his religious beliefs, he equated with bowing down to, or serving a "graven image," (319 U.S. at 629, 63 S.Ct. 1178), in violation of the injunction in Exodus,

Chapter 20, verses 4 and 5. (319 U.S. at 626–629 and nn. 2–3, 63 S.Ct. 1178). A reading of Barnette suggests that the symbolism formed the basis of the religious violation. The case, other than that, seems to have been decided basically as a deprivation of freedom of speech. Even the salute is regarded as "a form of utterance," (319 U.S. at 632, 63 S.Ct. 1178), which, when compelled, violates freedom of expression without reaching the "issue * * * of particular religious views or the sincerity with which they are held." (319 U.S. at 634, 63 S.Ct. at 1183).

7. 269 F.Supp. at 341. In Barnette, failure to pledge was insubordination—a student could be expelled and denied re-admission until he conformed. During the period of expulsion he was to be treated as a delinquent and his parents were subject to fines and imprisonment. 319 U.S. at 644–645, 63 S.Ct. 1178 (Murphy, J., concurring).

criminating selection of teachers' by its publicly supported educational institutions. See Shelton v. Tucker, 364 U.S. 479, at 495–496, 81 S.Ct. 247, at 256, 5 L.Ed.2d 231 (1960), (dissenting opinion of Frankfurter, J.), see also majority opinion at 485, 81 S.Ct. at 250."

269 F.Supp. at 341–342.

The same support oath at issue here has also been tested by teachers in Colorado and Florida who claimed invasion of free speech and free association rights together with denials of due process and equal protection guarantees. In all of these cases the Supreme Court has affirmed the constitutionality of the oath. Hosack v. Smiley, 276 F.Supp. 876 (D. Colo.1967), aff'd per curiam, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968); Ohlson v. Phillips, 304 F.Supp. 1152 (D.Colo.1969), aff'd per curiam, 397 U.S. 317, 90 S.Ct. 1124, 25 L.Ed.2d 337 (1970) and Connell v. Higginbotham, 305 F.Supp. 445 (M.D.Fla.1969), aff'd per curiam (on this issue), 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971).

While the attack in none of these cases has been bottomed on free exercise of religion grounds, it would appear clear that the oath is invulnerable to any attack on first amendment grounds. The Supreme Court has consistently held that the first amendment freedoms are closely intertwined. "This conjunction of liberties is not peculiar to religious activity and institutions alone. The First Amendment gives freedom of mind the same security as freedom of conscience." Thomas v. Collins, 323 U.S. 516, 531, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945). See also Baird v. State Bar of Arizona, 401 U.S. 1, 6, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); Schneider v. Smith, 390 U.S. 17, 25, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968).

█ The support oath in issue here is uniquely constitutional since it is mandated by the United States Constitution itself. Article VI, cl. 3.[8] This is the last clause of the Constitution and has historical significance as part of the supremacy doctrine. In Ableman v. Booth, 62 U.S. (21 How.) 506, 524–525, 16 L.Ed. 169 (1859), Chief Justice Taney stated:

"The Constitution of the United States with all the powers conferred by it on the General Government, and surrendered by the States, was the voluntary act of the people of the several States, deliberately done, for their own protection and safety against injustice from one another. And their anxiety to preserve it in full force, in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State, is proved by the clause which requires that the members of the State Legislatures, and all executive and judicial officers of the several States, (as well as those of the General Government,) shall be bound, by oath or affirmation, to support this Constitution. This is the last and closing clause of the Constitution, and inserted when the whole frame of Government, with the powers hereinbefore specified, had been adopted by the Convention; and it was in that form, and with these powers, that the Constitution was submitted to the people of the several States, for their consideration and decisions."

"Now, it certainly can be no humiliation to the citizen of a republic to yield a ready obedience to the laws as administered by the constituted authorities. On the contrary, it is among his first and highest duties as a citizen, because free government cannot exist without it."

It should also be emphasized that the last sentence of Article VI, cl. 3 specifically provides "but no religious Test shall ever be required as a Qualification to any Office or public Trust under the

---

8. "The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution * * *."

United States." There is no doubt that the free exercise of religion was in the framers' minds at this point—the oath was mandated but religious tests were proscribed.

■ The support oath's constitutionality has been repeatedly asserted. The most recent examination of the constitutionality of "oath taking" by the Supreme Court involved the attack by bar applicants in New York who objected on grounds of free speech and the right of political association, to answering the question in the application for admission "Can you conscientiously, and do you affirm that you are without mental reservation, loyal to and ready to support the Constitution of the United States?" The constitutionality of this affirmation was upheld by a divided court.[9] It is significant that the support oath or affirmation which was also required by the State of New York for members of the legal profession, was not attacked in that case and its constitutionality was adverted to repeatedly in the opinions. Writing for the majority, Mr. Justice Stewart said about the support oath "[T]here can be no doubt of its validity." [10] Mr. Justice Black, in dissenting, said "I have no doubt whatsoever about the validity." [11] Mr. Justice Marshall, dissenting, said "(T)he validity of the support oath is *sui generis*." [12] In the three judge court case below, Chief Judge Friendly said "The constitution-

ality of this oath is established by Knight v. Board of Regents * * *." [13]

Mr. Chief Justice Vinson, writing for the Court in American Communications Ass'n v. Douds, 339 U.S. 382, 415, 70 S.Ct. 674, 692, 94 L.Ed. 925 (1950), stated:

"Clearly the Constitution permits the requirement of oaths by officeholders to uphold the Constitution itself. The obvious implication is that those unwilling to take such an oath are to be barred from public office. For the President, a specific oath was set forth in the Constitution itself. Art. II, § 1. And Congress has detailed an oath for other federal officers. Obviously, the Framers of the Constitution thought that the exaction of an affirmation of minimal loyalty to the Government was worth the price of whatever deprivation of individual freedom of conscience was involved." (footnote omitted)

The argument that there is a conflict between the constitutional oath and the first amendment was again dispelled by the Supreme Court in Bond v. Floyd, 385 U.S. 116, 132, 87 S.Ct. 339, 347, 17 L.Ed. 2d 235 (1966).[14] The constitutionality of the constitutional oath, we find, is amply established by authority and it is immune from a first amendment attack.

■ We must next approach the question whether the state has a compelling interest in requiring plaintiff Biklen

9. Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

10. Id. at 161, 91 S.Ct. at 726; see Connell v. Higginbotham, 403 U.S. 207, 210, 91 S.Ct. 1772, 29 L.Ed.2d 418 (Stewart, J., concurring and dissenting).

11. 401 U.S. at 178, 91 S.Ct. at 733.

12. Id. at 192, 91 S.Ct. at 740; see also 403 U.S. at 209, 91 S.Ct. 1772 (Marshall, J., concurring).

13. Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 126 (S.D.N.Y.1969), aff'd, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

14. "[W]e do not quarrel with the State's contention that the oath provisions of the

United States and Georgia Constitutions do not violate the First Amendment." See also Justice Douglas' concurring opinion in Speiser v. Randall, 357 U.S. 513, 536, 78 S.Ct. 1332, 1346, 2 L.Ed.2d 1460 (1958): "All public officials—state and federal—must take an oath to support the Constitution by the express command of Article VI of the Constitution. * * * But otherwise the domains of conscience and belief have been set aside and protected from government intrusion." In Hosack v. Smiley, 276 F.Supp. 876, 880 (D.Colo.1967), aff'd per curiam, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968), the court held that "an oath to support the constitution and laws of the state and nation does not and can not (*sic*) run counter to *First Amendment freedoms*." (emphasis added).

to make an affirmation that is antithetic to her personal beliefs. In re Jenison, 375 U.S. 14, 84 S.Ct. 63, 11 L.Ed.2d 39, on remand, 267 Minn. 136, 125 N.W.2d 588 (1963); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The Supreme Court has consistently held that the religious freedom guarantee embraces "freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be" Cantwell v. Connecticut, 310 U.S. 296, 303–304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The extent to which one may act upon the dictates of his conscience is necessarily circumscribed by the serious needs of society. Yet, freedom of religion is a fundamental liberty and only a compelling societal interest can justify a state's intrusions upon one's religiously motivated activities. It is thus necessary to balance the governmental interests against the right invaded. Linscott v. Millers Falls Co., 440 F.2d 14, 17 (1st Cir. 1971). Thus the state's paramount interest in industrial peace justifies the discharge of an employee whose religious beliefs forbid his joining a union shop, Linscott v. Millers Falls Co., supra; Gray v. Gulf, Mobile & Ohio R.R., 429 F.2d 1064 (5th Cir. 1970), cert. denied, 400 U. S. 1001, 91 S.Ct. 461, 27 L.Ed.2d 451 (1971); and similarly an employer must deal with his employees' union despite his religious convictions, Cap Santa Vue, Inc. v. NLRB, 137 U.S.App.D.C. 395, 424 F.2d 883 (1970). That the state has a compelling interest in assuring the fitness and dedication of its teachers is a self-evident proposition.[15] Acordingly, it

may demand that those aspiring to labor in the sensitive area of the classroom be willing to affirm their support of its government systems. This affirmation does not inquire into one's present beliefs, political or religious. It is merely promissory.[16] Likewise, the state, like any employer, has the right (and the obligation) to require that its employees give assurance of their willingness to perform their duties to the best of their ability.[17] The suggestion of counsel in the briefs submitted on her behalf and on argument that the reasonable alternative for the state here is to test plaintiff's fealty to the Constitution and her dedication, by her performance in class, is surprising. It would require a constant intrusion upon her privacy and a surveillance of her political orthodoxy which is far more repugnant and odious than the present affirmation.

■ Here plaintiff's beliefs are sacrosanct—she is not being denied a teaching position in the public schools qua Quaker, orthodox or not. She is being denied because she refuses to affirm her support of the Constitutions of the United States and the State of New York or even that she will do her best as a teacher. The state has a demonstrable and compelling interest that she at least do this.

■ Plaintiff also alleges a denial of her right to due process of law under the fourteenth amendment since she was not afforded a full hearing with counsel by the School Board prior to her discharge. Plaintiff was specifically advised of the decision of the Board that she was not to

---

15. Shelton v. Tucker, 364 U.S. 479, 485, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). There the Supreme Court struck down, as violative of free association rights, an Arkansas statute which required every teacher "to file annually an affidavit listing without limitation every organization to which he has belonged or regularly contributed within the preceding five years." Id. at 480, 81 S.Ct. at 248. Section 3002 does not probe into any teacher's associational ties nor could it have any chilling effect on this first amendment right.

16. See Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 192, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) (Marshall, J., dissenting). See generally Asper, The Long and Unhappy History of Loyalty Testing in Maryland, 13 Am.J. Legal Hist. 97 (1969).

17. "It is certain that there is no right to be unfaithful in the performance of duties, and hence this undertaking is implicit." Ohlson v. Phillips, 304 F.Supp. 1152, 1155 (D.Colo.1969), aff'd per curiam, 397 U.S. 317, 90 S.Ct. 1124, 25 L.Ed.2d 337 (1970).

be retained unless she made the oath or affirmation. She had adequate opportunity to assess her position and to change her decision. Plaintiff's reasons for not taking the oath were irrelevant to the School Board; the clear wording of section 3002 left no room for discretion. A formal hearing would have been a meaningless gesture. See Hosack v. Smiley, 276 F.Supp. 876, 881 (D.Colo. 1967), aff'd per curiam, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968); Ohlson v. Phillips, 304 F.Supp. 1152, 1155, aff'd per curiam, 397 U.S. 317, 90 S.Ct. 1124, 25 L.Ed.2d 337 (1970).

Complaint dismissed.