Joethelia PALMER

v.

BOARD OF EDUCATION OF the CITY OF CHICAGO, a body politic and corporate, Joseph P. Hannon, Raymond C. Principe, Gerald J. Heing, Bessie F. Lawrence, Nina F. Jones, James G. Moffat, and Florence H. Paskind.

No. 77 C 4721.

United States District Court,
N. D. Illinois, E. D.

Jan. 31, 1979.

Ligtenberg, DeJong, Poltrock & Giampietro, Chicago, Ill., for plaintiff.

Michael J. Murray, Patrick D. Halligan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

The instant case for injunctive relief presents sensitive first amendment questions concerning a school board's proposed discharge of a teacher because of her refusal, based on religious belief, to instruct her students in the Pledge of Allegiance, to lead them in certain patriotic songs and to conduct instruction and activities concerning certain national holidays. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). The cause is before the court on her motion for a preliminary injunction. Fed.R.Civ.P. 65. Defendants move for summary judgment. Fed.R.Civ.P. 56. For the reasons stated below, plaintiff's motion is denied. Defendants' motion is granted and judgment is entered in their behalf.

The facts are not in dispute. Plaintiff, a Jehovah's Witness, was appointed in Sep-

tember, 1976 as a full-time non-tenured teacher by defendant Board of Education. She teaches a kindergarten class in the Field School. Prior to commencement of the 1976–77 school year, plaintiff visited defendant Florence Paskind, the school's principal, to inform her that due to her sincerely held religious convictions she would not teach "anything having to do with love of country, the flag and other patriotic matters." (Paskind dep., p. 8). In deference to these convictions, Paskind met with plaintiff and instituted certain procedures to accommodate her. During the course of that school year, Paskind permitted a "team teacher," a student teacher and, in certain instances, parent volunteers to instruct the children on matters of patriotism.[1] For various reasons, all of these methods proved infeasible.

During this period, plaintiff refused to lead activities related to holidays like Columbus Day, Halloween, Thanksgiving and Christmas.[2] At times, when no other aid was available, she allowed her five-year-old students to recite the pledge on their own. According to Paskind, the results of such a practice were "chaotic." (Paskind dep., p. 69). Plaintiff's teaching behavior failed in other respects. She overemphasized or ignored certain areas, failed to use toys provided and failed to prepare adequate lesson plans and was otherwise disorganized. During the school year, Paskind received complaints from parents concerning the fact that their children were not receiving the same instruction that other classes had received and that if she were to remain, they would hesitate to enroll their children in kindergarten there.

At the commencement of her second year teaching in September, 1977 plaintiff received a letter from Paskind directing her to do the following:

---

1. Paskind rejected using older students at the school as being burdensome on them. She also noted in her deposition that the Pledge of Allegiance is broadcast daily at 9:00 A.M. This second alternative was rejected because Paskind felt that children at kindergarten level need actual guidance in order to properly learn the pledge.

2. The holidays also included birthdays and "worshipful honors to the memory of prominent men." (Pl. letter to defendants dated Oct. 2, 1977). The holiday activities included story telling, play acting, singing and classroom decorating. According to Paskind, holiday activities were held on a weekly and sometimes daily basis.

1) Teach and direct, with proper diction and understanding, the Pledge of Allegiance to the flag of the United States.
2) Teach and direct the proper words and music of "America."
3) Teach and direct the proper words and music of other appropriate patriotic songs as well as other songs customarily taught to kindergarten children.
4) Teach and direct proper rhythms, dances and body movements to develop large motor skills.
5) Teach, direct and conduct activities preparatory to a variety of holidays commonly observed so children learn the ethos of all people and develop tolerance and appreciation.
6) Teach and direct play activities which develop social and personal interrelationships.
7) Teach children, by direction and example, to express skills of appreciation and gratitude.

The letter further stated that plaintiff had the right to express her own views "in a moderate way within the purview of a given course of study and in keeping with the maturity level of the children being taught."

By an October 2, 1977 letter, plaintiff responded that due to her religious principles she would not comply with directives 1, 2, 3 and 5. Specifically, she stated compliance would "damage my spiritual relationship with God, Jehovah [and] that [it] would damage my conscience serving Him." She stated that since the Bible proscribes her bowing down to any idol and that in her view the flag represented such an idol, she could not comply with the directive. She further stated that since she believed in the coming of God's government over mankind, she would not, as a Jehovah's Witness, commit herself patriotically to any existing government. She cited various biblical passages in support of her refusal to conduct holiday activities. Plaintiff pledged she would put forth extra effort in complying with directives 4, 6 and 7.

On December 21, 1977 plaintiff was served with notice from defendant Hannon that inasmuch as she had not complied with the required curriculum, her service as a probationary teacher would be terminated on December 23. The letter said that all possibilities for alternative placement had been reviewed and there was no other position available in which she could be accommodated.[3] Defendants never conducted any hearing prior to the discharge determination. Defendants have deferred taking action pending outcome of this suit.

A number of consequences have resulted from plaintiff's refusal to teach these matters. First grade teachers at the Field School had to instruct the children on subject matter they should have been taught by their kindergarten teacher. Parents and children have been upset. In one instance a child was reduced to tears because plaintiff refused to accept a Valentine's Day gift. (Paskind dep., p. 72). The cognitive area of instruction was unduly emphasized to the detriment of the children's affective or emotional development.

 In considering the merits of this suit, the court must necessarily distinguish between the freedom to believe in certain religious tenets and the freedom to act. As has been noted, the Supreme Court "has consistently held that the religious freedom guarantee embraces 'freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be.'" *Biklen v. Board of Education*, 333 F.Supp. 902, 909 (N.D.N.Y.1971), *aff'd*, 406 U.S. 951, 92 S.Ct. 2060, 32 L.Ed.2d 340 (1972), *citing Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Further, the court recognizes the defendant school board has an "undoubted right" to regulate its curriculum. *Epperson v. Arkansas*, 393 U.S. 97, 107, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). States acting

---

3. Paskind testified at her deposition that plaintiff at first refused to be considered for any other teaching position but kindergarten teacher, but that she later said she would work in any grade from kindergarten to third (p. 34).

through local school boards are possessed of power "to inculcate basic community values in students who may not be mature enough to deal with academic freedom as understood or practiced at higher educational levels." *East Hartford Education Assn. v. Board of Education*, 562 F.2d 838, 843 (2d Cir. 1977). Defendants are adjured by statute to insure plaintiff teaches matters of patriotism. Ill.Rev.Stat. ch. 122, §§ 27–3, 27–12 (1975).

██ Plaintiff's freedom of religion is a fundamental one and can be infringed only by the existence of a compelling state interest. Consequently, the court must balance the state's interest against plaintiff's right to be free from intrusion into her religiously motivated activities. "That the state has a compelling interest in assuring the fitness and dedication of its teachers is a self-evident proposition." *Biklen v. Board of Education*, 333 F.Supp. at 909. It follows that the regulation of curriculum in the primary grades is likewise compelling. In *Biklen*, a teacher, a Quaker, was discharged for her refusal to take an oath or make an affirmation that she would support the state and federal constitution and that she would perform her duties to the best of her abilities. On religious grounds, she declined. There as here

> plaintiff's beliefs are sacrosanct—she is not being denied a teaching position in the public schools *qua* Quaker, orthodox or not. She is being denied because she refuses to affirm her support of the Constitution of the United States and the State of New York or even that she will do her best as a teacher.

*Id.* at 909. The requirement in *Biklen* was far more onerous than the one required here. Plaintiff was specifically permitted to express to her students that her views did not coincide with those values taught in the Pledge of Allegiance and patriotic songs.

Citing a series of cases dealing with students' rights, plaintiff asserts that she has an absolute right not to be forced to instruct her students in the Pledge of Allegiance. In *West Virginia Board of Educa-*

*tion v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), the Supreme Court held the free exercise clause of the first amendment permitted students to refrain on the basis of their religious beliefs from participation in a legally mandated flag ceremony. This protection was extended to a variety of situations by the lower courts. *See, e. g., Goetz v. Ansell*, 477 F.2d 636 (2d Cir. 1973) (student not permitted to remain quietly sitting during pledge); *Frain v. Baron*, 307 F.Supp. 27 (E.D.N.Y.1969) (student not permitted to remain in room during pledge). These cases are obviously distinguishable on the ground that they involve the individual rights of students where the exercise of such rights does not result in substantial disruption to the classroom.

██ Two cases have squarely held that a teacher can raise the shield of the first amendment in instances where he is discharged for his refusal to pledge allegiance. In *Russo v. Central School District No. 1*, 469 F.2d 623 (2d Cir. 1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1899, 36 L.Ed.2d 391 (1973) a high school art teacher was dismissed for refusal to participate in the pledge. During the ceremony, she would stand at respectful attention while a fellow teacher assigned to the class conducted the activity. Her behavior was not disruptive. Discharge on the basis of her refusal alone was held to violate her rights. The court limited its holding to the circumstances of the case: the lack of disruption; the supervision of the other teacher; her avoidance of any proselytizing; the fact that her pupils, who ranged in age from 14 to 16 years, "were not fresh out of their cradles." 469 F.2d at 633. The court noted that if she had been a student her refusal was a form of expression that would have been protected under *Barnette*. Noting that *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 held that neither students nor teachers "shed their constitutional rights to freedom of speech or expression at the school house gate," the court held the legitimate state concerns in maintaining flag salute pro-

grams could be furthered in a less restrictive manner and therefore the regulations in question "do not meet the test of constitutional exactness required by the First Amendment." *Russo v. Central School District No. 1,* 469 F.2d at 632–633. Similarly, in *Hanover v. Northrup,* 325 F.Supp. 170 (D.Conn.1970), a seventh and eighth grade teacher was discharged for her refusal to lead the class in the pledge. The court held her refusal was a form of expression protected by the first amendment noting "there was no suggestion that Mrs. Hanover's behavior resulted in any disruption of school activities." 325 F.Supp. at 173.

■ *Russo* and *Hanover* do not apply to the facts of the instant case. Defendants have demonstrated that not only did plaintiff refuse to participate in the pledge, she also refused to teach certain patriotic songs and conduct holiday activities. Such curricular nonconformity is not protected. *See, e. g., Adams v. Campbell County School District,* 511 F.2d 1242 (10th Cir. 1975); *Clark v. Holmes,* 474 F.2d 928 (7th Cir. 1972), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973); *Ahern v. Board of Education,* 456 F.2d 399 (8th Cir. 1972); *Hibbs v. Board of Education,* 392 F.Supp. 1202 (N.D.Iowa 1975). Further, her refusal resulted in substantial upset to all involved: to the parents, students and other teachers. (Paskind dep., pp. 30–31). The principal was forced to obtain alternative modes of instruction. (Paskind dep., pp. 20–25, 33). The first grade teachers were forced to teach subject matter that should have been covered in kindergarten. (Paskind dep., p. 64). Parents complained. (Paskind dep., p. 30). All of the cases cited by plaintiff conditioned nonparticipation on the factor of nondisruption. The cases are distinguishable on that basis.

■ For the purpose of this case, the court can assume that the discharge of a teacher for her refusal to instruct her students in the pledge is a constitutional viola-

tion. Assuming her refusal to teach the pledge is protected, her refusal to participate in holiday activities and songs is not protected as the cases cited above hold in a free speech context.[4] The fact that the decision to discharge was based in "substantial part" on the protected activity does not end the court's inquiry.

Initially, in this case, the burden was properly placed upon respondent to show that his conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). *See also Schmidt v. Freemont County School Dist. No. 25,* 558 F.2d 982 (10th Cir. 1977); *Johnson v. Cain,* 430 F.Supp. 518, 521 (M.D.Ala.1977). This determination necessarily depends on the facts of each individual case. *East Hartford Education Ass'n v. Board of Education,* 562 F.2d at 843. Assuming that the refusal to lead the class in the pledge was protected and the refusal played a substantial part in defendants' decision to discharge plaintiff, the court must inquire whether the defendants could have reached the same conclusion in the absence of such conduct. Defendants clearly could have discharged plaintiff because of her refusal to follow the school curriculum requirement. As noted above, the refusal to conform classroom teaching to a prescribed curriculum is not protected. Since plaintiff conceded that she failed to follow the curriculum, this neutral ground supports the conclusion that defendants would have reached the same conclusion in the absence of the protected activity.[5]

---

4. Any alleged religious overtones to those activities are not grounds for refusing to teach them. *See Smith v. Denny,* 280 F.Supp. 651 (E.D.Cal.1968).

5. Plaintiff's contention that she was deprived of due process by virtue of defendants' failure to afford her notice and a hearing prior to deciding to discharge her is without merit. Plaintiff

Accordingly, defendants' motion for summary judgment is granted and judgment is entered in their behalf. This case is hereby dismissed.

It is so ordered.

as a non-tenured teacher has no entitlement to continued employment under state law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Further, as noted in the court's opinion, she was not ordered discharged for exercise of a liberty protected by the constitution. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).